**PETER SZANTO in propria personna**
**P. O. BOX 10451**
**NEWPORT BEACH CA 92658**
**949 887 2369**



# UNITED STATES DISTRICT COURT

**in and for THE DIS**

**2:06-cv-00048**

| | |
|---|---|
| **PETER SZANTO, Plaintiff,** vs. **KLARA SZANTO (deceased), THE ESTATE OF KLARA SZANTO, PAUL SZANTO, PAUL and KLARA SZANTO REVOCABLE TRUST dated March 19, 1991** Defendants | **COMPLAINT FOR DAMAGES** **BREACH of CONTRACT** **BREACH of FIDUCIARY DUTY** **NEGLIGENT MISREPRESENTATION** |

1. The plaintiff is the natural son of Paul Szanto and Klara Szanto, who in spite of this action loves his parents very much.
2. The events which are the basis for this action began in 1996 and continue today.
3. At the time of the commencement of the events in this action, diversity existed between plaintiff, a citizen of Georgia, and defendants, citizens of California.
4. The primary gravaman of this action involves that real property known as, and in the vicinity, of 2216 Benmore Street, Las Vegas, NV 89108 .
5. Therefore, on the basis of diversity and real property within this district, jurisdiction before this court is appropriate.
6. In November 1996, Paul Szanto and Klara Szanto revealed to Peter Szanto

**the sale of the elder Szantos' businesses, including, but not limited to those ventures known as Santo Studio, Hermes Co., Her Company, Hermes Gallery and Herco Corporation.**

**7. Analyses of those sales transaction revealed the sales price to be woefully inadequate; and Paul and Klara Szanto expressed great remorse at having entered into those transactions.**

**8. From that time in November 1996, Peter Szanto counseled and consulted with the elder Szantos in an attempt to:**

**a. recoup their lost business' sale profits by either rescinding or reforming the sales contracts.**

**b. obtaining psychological counseling for them so as to encourage them to exit the morass of regret, self-lothing and depression in which they dwelt from the regretted sales of their businesses.**

**c. focus them on new business ventures, new investments and new personal relationships.**

**d. develop stronger bonds with their grandchildren.**

**9. Peter Szanto's efforts described in #8 above form part of the consideration, along with other monetary consideration, for the alleged implied in fact contracts, oral contracts and agreements and the other payments described below.**

**10. Peter Szanto is a licensed Real Estate Broker in California and the United Kingdom. He is also a member of the National Association of Realtors.**

**11. In late 1999 and early 2000, the plaintiff and defendants began discussions about their joint participation in a real estate venture herein after referred to as the Las Vegas Project.**

**12. The defendants, who frequently vacationed in Las Vegas, had positive**



/////

thoughts about investing in Las Vegas residential real estate.

13. Because of his love, respect and admiration for his parents' and their business acumen, plaintiff accepted as true many propositions that defendants told him, without the in-depth inquiry he would have conducted with others.

14. When defendants told plaintiff about their intention to invest in that real property known as, and in the vicinity, of 2216 Benmore Street, Las Vegas, NV 89108; plaintiff agreed to participation in an aggregate amount of $1,500,000.00 for a 1/3 (33.333%) share of the total transaction.

15. Plaintiff's participation was a combination of consideration in the form of cash, the forgiveness of past indebtedness and the promise of future assistance in the Las Vegas project and other ventures.

16. Defendants told plaintiff that title in that real property known as, and in the vicinity, of 2216 Benmore Street, Las Vegas, NV 89108 had vested to the three of them as joint tenants with rights of survivorship.

17. From that time in 2000 until now, defendants had told plaintiff the investment was requiring the reinvestment of all income from rents into upgrades and development of the property; rent income was also being used to pay utilities, property taxes, the salaries of various maintenance and managerial personnel.

18. As, on so many numerous occasions, because plaintiff was working with his parents, he did not pursue further interrogations about the matter.

19. Likewise, because there were no profits, plaintiff had no need to include the accounts of that real estate rental on his Income Tax personal or partnership forms; likewise because there was no income, plaintiff did not begin use of the depreciation basis of the property which would have offset any income.

//////////////////////

20. Additionally, in the years encompassed in this action, defendants, Paul aged 84, and Klara aged 80 (now deceased), have suffered a multitude of health related issues, hospitalizations and the need for continuing and on-going care.

21. On December 5, 2005, Klara Szanto died.

22. Only in the weeks since then did plaintiff learn the truth about the Las Vegas Project.

23. To his horror and amazement, plaintiff discovered that the investment in that real property known as, and in the vicinity, of 2216 Benmore Street, Las Vegas, NV 89108 had been foreclosed upon and all value of his investment has been lost.

24. Plaintiff's further inquires to his father have been futile.

25. Whereon, this action seeks restitution of those money's that plaintiff has entrusted to defendants, and all of them, in the amount of $1,500,000.00 and the future profits that would normally been expected from a project of this nature.

26. Plaintiff also seeks damages to his expectations for his investment with defendants also in the amount of $1,500,000.00.

27. Plaintiff also seeks costs of this action and such further relief as this Court might deem appropriate.

Dated January 10, 2006 Peter Szanto ____________________