1 PETER SZANTO in propria personna
P. O. BOX 10451
2 NEWPORT BEACH CA 92658
949 887 2369

# UNITED STATES DISTRICT COURT

## in and for THE DISTRICT OF NEVADA

| | |
|---|---|
| PETER SZANTO, Plaintiff, | Case No. 2:06-cv-00048 |
| vs. | DECLARATION OF PETER SZANTO |
| KLARA SZANTO (deceased), | SUPPORTING |
| THE ESTATE OF KLARA SZANTO, | RESPONSE and OPPOSITION |
| PAUL SZANTO, PAUL and KLARA SZANTO | TO MOTION TO SET ASIDE |
| REVOCABLE TRUST dated March 19, 1991 | CLERK'S ENTRY OF DEFAULT |
| Defendants | Honorable Chief Judge Philip M. Pro |
| | Due on April 24, 2006 |
| | ** ORAL ARGUMENT IS REQUESTED ** |

1. My name is Peter Szanto.

2. I am the plaintiff in this action and this is my truthful declaration.

3. All of the matters and incidents described herewith are known by me to be true, by my own personal knowledge.

4. My mother, Klara Szanto, died on December 5, 2005. For 30 days thereafter I sat shiva for her. I did not leave the house and rarely spoke to anyone.

5. On January 7, 2006, I went to console Paul Szanto, the defendant who is my natural father.

**DECLARATION OF PETER SZANTO SUPPORTING RESPONSE TO MOTION TO SET ASIDE - 1**

6. My father talked to me about being sad and feeling very alone.

7. My father told me that his health was ok; he did not complain about pain.

8. My father and I talked for many hours about my mother's life.

9. My father and I talked about his plans for the future.

10. My father expressed great emotion and sadness about the speed with which my siblings had removed much of my mother's personal property (jewelry, precious metal coins, loose gems, furs, cloths and shoes) from his house.

11. My father also expressed great concern about the extent to which my siblings had examined, destroyed and removed many of my mother's personal papers, photos, mementos legal documents and writings.

12. My father acknowledged that my siblings had gone through my papers, books files, data disks and other possessions that are my personal property that I keep at his house.

13. My father said he was not surprised when I told him many items were missing and unaccounted for.

14. I asked my father many questions about financial and business matters.

15. When I asked my father about our Las Vegas project he was reluctant to talk.

16. I did not attempt to berate or cross-exam him, but let the matter rest then.

17. The following business day, I made inquiry and discovered that the property in Las Vegas was no longer owned by the Szantos.

18. Further attempts at conversations with my father about the Las Vegas project, led me to the conclusion that there are very many questions about which my father wants no further discussion or inquiry.

19. My conversations with my siblings about the Las Vegas project were met with reticence to talk and assertions of lack of knowledge and lack of interest.

**DECLARATION OF PETER SZANTO SUPPORTING RESPONSE TO MOTION TO SET ASIDE - 2**

20. I told my father that because of the volume of missing papers, files and computer records; because I was not getting straight answers from him; because my siblings were being purposefully evasive and because my mother would never, ever let a resolution regarding any project get so out-of-hand, I would have to get the court involved to help sort the situation out before things got even worse.

21. My father's comment at that time was merely a sigh of the deepest frustration.

22. My father has been the proprietor and president of many businesses during his professional career.

23. My father has business experience in Hungary, Austria, the U.K. and the U.S.A.

24. My father's business experience is mostly that of senior manager, principal and owner.

25. My father has often commented to me that American society is extremely litigious.

26. I recall my father making this remark about litigiousness in 1968 about somebody suing him for $75,000.00 for a fender bender in which I was driving his car.

27. My father made this same remark about the litigiousness of America when I told him about my intent to pursue this action.

28. I have known my father to prosecute and pursue legal actions in forma propria persona on many occasions.

29. In 1996 and 1997, when I was living outside of California, my father helped me prosecute an unlawful detainer action and its subsequent civil claim in San Mateo County.

30. Because my father has had extensive experience in unlawful detainer actions he helped me obtain a speedy order of right to re-enter real property in that matter.

31. After I recovered my property in that action, it was my father who explained to me how to convert the summary action in ejectment into a regular civil action for damages.

DECLARATION OF PETER SZANTO SUPPORTING RESPONSE TO MOTION TO SET ASIDE - 3

32. On January 16, 2006 after I learned that my father had been personally and properly served in this matter, I talked with him by phone to confirm that service.

33. ON JANUARY 16, 2006, MY FATHER TOLD ME SPECIFICALLY THAT HE HAD BEEN SERVED WITH THE SUMMONS, COMPLAINT AND CIVIL CASE COVER SHEET IN THIS MATTER.

34. My father understood my position that based on the evasive and incomplete answers I had received from him and my siblings, I had no alternative but to protect my rights by way of a formal proceeding.

35. My father made several comments at that time that he was ashamed that my siblings had so little respect for the papers, books and files of my mother and myself that had been removed from his house.

36. My father did not say anything that was angry or mean spirited about my strategy.

37. My father stated no intention to defend this lawsuit.

38. My father made no comments at that time as to whether or not he would engage counsel or defend the matter on his own; but stated he was thinking.

39. On February 11, 2006, my wife Susan and I went to visit Paul Szanto.

40. At that time, my wife personally handed Paul Szanto copies of the defaults which had been filed and entered in this action.

41. My father's statement at that time was "maybe now everyone will work everything out."

42. During the remainder of the visit we talked about many other matters, but did not talk further about this action.

43. My father, during the last 50 years, has commented to me about various aches and pains he has had; often in his back.

44. Now that I am in my 50's, I have similar aches and pains; often in my back.

DECLARATION OF PETER SZANTO SUPPORTING RESPONSE TO MOTION TO SET ASIDE - 4

**45. My lay opinion of these aches and pains was, and is, that they were not**

   **sufficiently serious to warrant medical attention, because my father did not go to**

   **see any doctor for those specific back aches and pains.**

**46. When my father would complain about back pain; my mother would ask if**

   **he thought it serious enough to go to the hospital; the answer was always no.**

**47. At no time has my father ever remarked that the pain was hard to tolerate or that**

   **he thought his condition would be improved by medication.**

**48. At no time has my father expressed to me that he was so depressed that he**

   **needed to use medication.**

**49. The only occasions on which my father told me he was using medication was**

   **when he was hospitalized after breaking his hip. He was given, and used, the**

   **medication Dilaudid. I remember this because I recall him making a joke that**

   **using Dilaudid he was becoming deluded.**

**43. The only other medications that my father has ever told me about using were for**

   **hypertension and cholesterol management.**

**44. I am exceedingly aware of my father's personal desire for independence and his**

   **wish not to have his freedom restricted in anyway.**

**45. My father has often spoken to me about old friends of his who were treated**

   **"like dogs in cages" in their twilight years. These comments are <u>always</u>**

   **followed by the vow that won't happen to him.**

**46.  At the time my father executed the power of attorney that was presented to this**

   **court, he was recovering from a very severe case of bronchitis or pneumonia.**

**47.  The power of attorney presented to this court, is the type of document my**

   **father would have told me about; rather than have kept secret from me.**

**48. However, my father never told me about that power of attorney.**

**DECLARATION OF PETER SZANTO SUPPORTING RESPONSE TO MOTION TO SET ASIDE - 5**

**49.  Because my father never told me about the power of attorney,**

   **my belief is that he signed it in error, was unduly influenced to sign it,**

   **or signed it at a time when, because of illness (or the drugs used to treat the**

   **illness), his mental capacity was diminished to the extent that he did not**

   **comprehend the nature or the and importance of the document he was signing.**

**50. On October 23, 1956, in Budapest, Hungary, I personally watched my father, along**

   **with 2 or 3 dozen other men, with their bare hands, topple a 70 foot tall bronze**

   **statute of Josef Stalin.**

**51. At that time, in disregard for his own personal safety, my father was willing to**

   **make a statement for freedom and liberty.**

**52. Other events throughout my father's life, too numerous to mention here in**

   **complete detail, evidence my father's desire to be free of others telling him what**

   **to do and when to do it.; or restricting him in any way whatever.**

**53. My father's views about personal freedom, the sanctity of the individual, the right**

   **to privacy and the importance of taking a personal stake in one's own affairs are**

   **intense and passionate.**

**54. My father has told me that he knows of nothing that would interfere with his**

   **intention to live on his own for the rest of his life.**

**55. My father and I have had numerous conversations in the last few months.**

**56. In none of the conversations that my father and I have had since this matter began**

   **has he indicated to me that he has retained counsel to challenge the defaults that**

   **have been entered.**

**57. My father has expressed no intent to me as to his plans regarding this action.**

**58. Most of the conversations my father and I have had recently revolved around what**

   **his grandchildren (my three children) were doing.**

**DECLARATION OF PETER SZANTO SUPPORTING RESPONSE TO MOTION TO SET ASIDE - 6**

59. My father and I have talked about this case only to the extent that my father is still thinking about what he will do.

60. I have never considered myself estranged from any one in my family.

61. It is true that my siblings and I are going through a period of disagreement, as to matters, but, until mentioned here, I did not consider the difficulties as estrangement.

62. I love my father and my siblings very much; there is no limitation as to my devotion to my family; however, I will not allow myself to be taken advantage of.

63. I am pursuing this matter in this Court, because the lack of communication with my family has left me with no alternative.

I declare under penalty of perjury under the laws of the United States of America the foregoing is true and correct.

April 24 2006                              _____ Peter Szanto

DECLARATION OF PETER SZANTO SUPPORTING RESPONSE TO MOTION TO SET ASIDE - 7